IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

AMANDA BRIE TILTSCHER,

      Plaintiff,

v.

SEAN DONOVAN,
JUSTIN CREWSE,
RYAN MARTINEZ, and
CITY OF LAKEWOOD,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

PLAINTIFF AMANDA BRIE TILTSCHER, through her attorneys Donald T. Trinen, LLC, complains against defendants Sean Donovan, Justin Crewse, Ryan Martinez, and City of Lakewood as follows:

    1. Plaintiff Amanda Brie Tiltscher ("Amanda") is the single mother of a five-year-old boy and twin three-year-old girls ("the Children"), the full-time custodian of 51-year-old mentally disabled Howard, and a part-time body shop office manager.

    2. At all relevant times defendants Sean Donovan ("Donovan"), Justin Crewse ("Crewse"), and Ryan Martinez ("Martinez") were Lakewood police officers, acting under color of Colorado law. All are sued in their individual capacities. Defendant City of Lakewood ("Lakewood") is a Colorado municipal corporation and the employer of Donovan, Crewse, and Martinez.

    3. Jason Durbin is the father of the Children, and has visitation rights pursuant to a court-approved agreement ("the Visitation Agreement").

    4. On October 8, 2016 Amanda purchased an Apple iPhone 6 from T-Mobile USA, Inc. ("T-Mobile") for the sum of $479.99 ("the Phone"), and contracted for related monthly wireless telephone service. The $479.99 cost of the Phone was payable in monthly installments of $20; and the monthly wireless telephone service charges attributable to the Phone were $65.

    5. To facilitate the Visitation Agreement Amanda allowed Jason to use the Phone on the condition that he pay Amanda $85 at the beginning of each month. At all relevant times Jason

did not have his own phone because his finances and credit standing did not permit it. His previous personal cell phone contract with T-Mobile had been cancelled for nonpayment.

6. At about 9:15 a.m. on Saturday, January 14, 2017 Amanda arrived at a convenience store parking lot in Lakewood to hand over the Children for a Jason visitation. A public place was used because loud arguments had erupted during prior private-place exchanges.

7. At the beginning of their encounter Jason complained that Amanda was late, and Amanda complained that Jason had failed to timely pay the agreed charge for the Phone, child support, and reimbursement for furniture in Jason's possession paid for by Amanda.

8. Amanda demanded assurances from Jason that the overdue amounts would be promptly paid. Jason responded: "Deal with it." So she did. While putting the Children in Jason's truck Amanda saw the Phone, put it in her pocket, left the truck, and told Jason "If you're not going to pay for a phone you're not going to have a phone."

9. Jason then entered Amanda's car, took Amanda's purse (which contained her car keys), and announced that unless he got the Phone back Amanda wouldn't get her purse back. By this time a gasoline delivery truck had entered the convenience store parking lot, blocking Jason's exit.

10. Jason began yelling at the gasoline truck driver; the Children became distraught; and Amanda discovered a text message on the Phone indicating that Jason had been in a bar until 4:30 a.m. that morning. The Visitation Agreement prohibited alcohol consumption by Jason within 12 hours of a visitation. Being fearful that Jason was under the influence and about to depart with the Children (and her purse), Amanda called 911.

11. Donovan, Crewse, and Martinez responded to the scene. Donovan began talking to Jason, Crewse began talking to Amanda, and Martinez was milling about between Donovan and Crewse. The parties were at all times within a few feet and earshot of each other. Amanda wanted her purse, and she wanted Jason tested for blood alcohol content. She got the purse but not the test. Jason wanted the Phone back: "She took my phone."

12. Amanda explained to Donovan, Crewse, and Martinez that the Phone did not belong to Jason, that the Phone belonged to her, that she had paid for the Phone, that she was the party liable on the T-Mobile purchase and service contract for the Phone, that Jason had been allowed to use the Phone only on the condition that he timely pay $85 per month, and that she had taken possession of the Phone because Jason had failed to pay the agreed amount for its use. She then activated the Phone and brought up (and showed and explained to Crewse) "screen shots" depicting, first, the most recent T-Mobile monthly statement detailing her purchase of the Phone, and second, the T-Mobile phone number assignments for the three phones serviced by T-Mobile under the Amanda-plan. The number assigned to the Phone was 720.298.2881. The "screen shots" depicting these T-Mobile records are reproduced below.

2

Screen Shot No. 1



Screen Shot No. 2



*This entry was present on the screenshot on January 14, 2017, but was later deleted by T-Mobile when Amanda reported the Phone stolen (by Donovan and Jason). It has been manually added back here.

13. Donovan then approached Amanda and demanded that she give Jason the Phone. She refused: "He hasn't even paid child support, and I'm supposed to pay for a phone?" Donovan again demanded that she give Jason the Phone. She refused. On her third refusal, Donovan karate-chopped the Phone from her hand, grabbed her arms, spun her around, pinned her against a car, and put her in cuffs. Donovan had just arrested Amanda for stealing her own phone.

14. Amanda became distressed with concern for the Children (who appeared to be traumatized from witnessing their mother being manhandled and cuffed), and for Howard (who might end up alone without care or supervision). She pleaded with Donovan to let her go (since he now had the Phone). Donovan refused.

15. After Amanda's arrest Jason called Amanda's mother (using the newly-reacquired Phone). He told her the Children and Howard could need her assistance because Amanda had been arrested. At the mother's request Jason handed the Phone to the nearest officer, Martinez. Amanda's mother told Martinez the Phone was Amanda's, that the police were making a

4

mistake, and that she wanted to talk to the arresting officer. Martinez held the Phone out to Donovan and gestured for him to talk to the caller, but Donovan waived him off declaring, "I'm taking this bitch to jail."

16. And take Amanda to jail he did. Before the ride he told her "you should have listened", and "on these d.v. (domestic violence) calls someone has to go to jail."

17. Donovan charged Amanda with misdemeanor theft under C.R.S. §18-4-401, as well as domestic violence under C.R.S. §18-6-800.3, et seq. Donovan's addition of the domestic violence charge ensured that Amanda would sit in jail until the following Tuesday afternoon, because it was a holiday weekend and because domestic violence case bail posting requires a court appearance for an advisement of the terms of a mandatory order protecting the "victim"—here Jason. (C.R.S. §18-1-1001(5)).

18. And sit in jail she did, from late Saturday morning to early Tuesday afternoon.

19. When Amanda finally got in front of a judge Tuesday afternoon she was ordered released from jail and the charges were dismissed.

20. As the result of her arrest (and the battery that preceded it) and incarceration, Amanda suffered pain, shock, fear, anxiety, distress, humiliation, headaches from nicotine withdrawal, loss of liberty, loss of dignity, and loss of enjoyment of life. She also suffered and continues to suffer from depression, panic attacks, sleeplessness, and nightmares. She will incur legal costs associated with expunging the charges. She also has suffered reputational harm that may impair her ability to obtain state caregiver contracts—with the attendant loss of income.

21. Donovan had no probable cause to arrest Amanda for theft or domestic violence, and under the circumstances no reasonable officer would have believed that Amanda had committed theft or domestic violence. Donovan's arrest and jailing of Amanda constituted an unreasonable seizure of Amanda under the Fourth Amendment to the United States Constitution (binding on the states under the Fourteenth Amendment to the United States Constitution), and is actionable under 42 U.S.C. §1983 ("§1983").

22. This Court has jurisdiction under 28 U.S.C. §1331.

23. Donovan is liable to Amanda under §1983 for actual damages for the above-described injuries in an amount to be proved at trial. Donovan is also liable to Amanda under §1983 for exemplary damages in an amount to be proved at trial, because his wrongful conduct toward her was willful, wanton, malicious, and in reckless disregard for her Fourth Amendment rights.

24. Crewse and Martinez are jointly and severally liable with Donovan for Amanda's actual damages under §1983 because they knew that there was no probable cause to arrest Amanda for theft or domestic violence, and yet they stood by and did nothing. They failed to intercede to prevent or terminate the unreasonable seizure of Amanda, under circumstances where they were well able to do so.

5

25. Lakewood is jointly and severally liable with Donovan, Crewse, and Martinez for Amanda's actual damages under §1983 because at all relevant times the Lakewood Police Department enforced or followed a policy, practice, or custom of arresting and jailing one of the parties in "domestic calls", whether probable cause existed or not. This policy, practice, or custom directly led to the unreasonable seizure of Amanda and the resulting injuries complained of.

26. Pursuant to 42 U.S.C. §1988 Amanda is entitled to an award of reasonable attorney fees against Donovan, Crewse, Martinez, and Lakewood, jointly and severally.

WHEREFORE, plaintiff Amanda Brie Tiltscher demands judgment as follows:

a. against defendants Sean Donovan, Justin Crewse, Ryan Martinez, and City of Lakewood, jointly and severally, for actual damages under 42 U.S.C. §1983 in an amount to be proved at trial;

b. against defendant Sean Donovan, for exemplary damages under 42 U.S.C. §1983 in an amount to be proved at trial;

c. against defendants Sean Donovan, Justin Crewse, Ryan Martinez, and City of Lakewood, jointly and severally, for attorney fees under 42 U.S.C. §1983 in an amount to be set by the Court; and

d. against defendants Sean Donovan, Justine Crewse, Ryan Martinez, and City of Lakewood, jointly and severally, for interest, costs other than attorney fees, and such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiff Amanda Brie Tiltscher hereby demands trial by jury.

DATED this 5th day of April, 2017.

s/ Donald T. Trinen
Donald T. Trinen
Donald T. Trinen, LLC
18851 E. Vassar Dr.
Aurora, CO 80013
Telephone: (720) 900-3974
Email: trinenlaw@comcast.net

ATTORNEYS FOR PLAINTIFF AMANDA BRIE TILTSCHER